## IN THE UNITED STATED DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DR. RONALD L. SCHROEDER, 1st WAY PREGNANCY SUPPORT SERVICES, an Illinois not-for-profit corporation, and PREGNANCY AID SOUTH SUBURBS, an Illinois not-for-profit corporation,<br><br>                        Plaintiffs,<br>v.<br>BRUCE RAUNER, in his official capacity as Governor of Illinois; BRYAN A. SCHNEIDER, in his official capacity as Secretary of the Illinois Department of Financial and Professional Regulation, THOMAS E. PRICE, in his official capacity as Secretary of Health and Human Services, and SEAN CAVANAUGH, in his official capacity as Acting Director, Centers for Medicare and Medicaid Services,<br>                        Defendants. | Case No. 17 cv 03076<br><br>Hon. Sue E. Myerscough<br><br>PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION UNDER FED.R.CIV.P. 65(a). |

## INTRODUCTION

Plaintiffs' mission, rooted in Christian belief, is to motivate women in crisis pregnancies to freely choose life for their unborn babies. Plaintiffs' Christian beliefs prevent them from touting the so-called benefits of the very choice (abortion) they hope their clients will eschew, and, it follows, from referring clients to abortion providers. Public Act 99-690 ("P.A. 99-690") requires Plaintiffs to do just that, on pain of discrimination, sanctions, and liability. Plaintiffs seek the Court's preliminary injunction to restrain the state Defendants from enforcing P.A. 99-690 against them on the grounds that to do so would abridge their rights of free speech, due process of law, and free exercise of religion.

## FACTUAL BACKGROUND

**Dr. Ronald L. Schroeder, M.D.** Dr. Schroeder is licensed to practice in the State of Illinois in the specialty of Obstetrics and Gynecology. He has practiced in this specialty since

1

1973 and provides pro bono medical care to women in crisis pregnancies. **Ex. 1**, Declaration of Dr. Schroeder ("Schroeder Dec."), ¶¶1-2, 7. He typically administers an ultrasound to pregnant clients, estimates the gestational age of the fetus, and discusses the pregnancy. Schroeder Dec. ¶¶ 6-8. Dr. Schroeder's religious beliefs morally prohibit him from complying with P.A. 99-690's requirement that he discuss abortion's benefits and risks, and refer for abortion or like services. Schroeder Dec. ¶¶8-12.

**1st Way Life Center.** 1st Way is a not-for-profit Illinois corporation providing emotional, material, and financial support to women who find themselves in a crisis pregnancy. It seeks to provide an open, loving environment where women feel safe and empowered to choose life for their child. All services are provided free of charge, without discrimination, and are confidential. **Ex. 2**, Declaration of Judy Cocks ("Cocks Dec"), ¶1-4, 7-8. 1st Way provides certain limited medical services such as pregnancy testing and ultrasound screening; but it does not provide primary care. All clients are informed of these limitations and advised to seek primary care from a licensed physician. Cocks Dec. ¶¶ 4-5. The remainder of the counseling is provided by lay volunteers, who are not, and do not hold themselves out to be, medical professionals. They offer no medical advice, but discuss matters of public concern, such as abortion and other pregnancy outcomes (parenting and adoption), in the primary context of a client's personal situation, and in a way to empower the client to make decisions about pregnancy with greater knowledge and with encouragement and empowerment. Cocks Dec. ¶¶6-7.

Over its 39 years 1st Way has helped 12,000 expectant mothers; 67% of its clients are single women; 62% are unemployed; 61% do not have a high school diploma; and their average age is 24. Cocks Dec. ¶¶8-9. 1st Way cannot comply with P.A. 99-690 because of its sincerely held religious convictions. Its medical director has resigned to avoid any possibility of sanctions from noncompliance with P.A. 99-690. Cocks Dec. ¶ 12. As result, 1st Way's ability to help

2

women in crisis has been substantially curtailed by its current inability to offer medical services to its clients. Cocks Dec. 10-14.

**Pregnancy Aid South Suburbs (PASS).** PASS is a faith-based Christian ministry formed to help pregnant women choose life for their baby and support the mother in first two years of motherhood. **Ex. 3**, Declaration of Tim Dilbeck ("Dilbeck Dec"), at ¶¶1-3. PASS offers women pregnancy tests, and if they are pregnant, a limited ultrasound (during first trimester) but not primary care; clients are told about the limited services PASS makes available and advised that they should seek primary care from a licensed physician. Dilbeck Dec. ¶¶3-5. The remaining counseling is by lay volunteers who do not hold themselves out as licensed professionals and do not offer medical advice. These conversations touch on topics of public concern like abortion; but their primary focus is on the personal situation of the client and how PASS can help her choose life for her baby and take care of her child. Dilbeck Dec. at ¶6-8.

In the 34 years of its existence, PASS has served over 51,000 women. It distributes at least $75,000 worth of aid each year. Dilbeck Dec. ¶¶3, 7. PASS cannot comply with P.A. 99-690 consistent with its sincerely-held religious convictions. During the pendency of this suit it is complying under duress because it believes it cannot abandon the women who come to it seeking help. Dilbeck Dec. at ¶¶9-11.

**Impact of P.A. 99-690.** The Illinois HealthCare Right of Conscience Act, ("IHRCA"), defines health care broadly to include "any phase of patient care, including…testing, instructions, counseling, referrals…or any other advice in connection with the use or procurement of contraception…sterilization…or abortion…rendered by a physician[s]..nurse[s], paraprofessionals, or a health care facility, intended for the physical, emotional, and mental well-being of the person. See 745 ILCS 70/3(a). Physician means a person licensed to practice under state law, and health care personnel means any "nurse…professional, paraprofessional or any

other person who assists in the furnishing of, healthcare services." Id at 70/3(b)&(c). Health care facility is defined to include any "location wherein healthcare services are provided to any person…." Id at 70/3(d). As initially enacted, the IHRCA provided broad protection to entities and individuals rendering health care as required by their conscientious convictions. See 745 ILCS §70/4 & §|§70/9—70/11.4 (prohibiting a wide range of discrimination and providing immunity). But since P.A. 99-690 became effective on January 1, 2017, the opposite is true.

P.A. 99-690 imposes a legal duty to adopt a written protocol addressing access to care and information, including advising patients about the "risks and benefits" of abortion, contraception, and sterilization, and requiring Plaintiffs to provide referrals or information about entities who provide abortion, contraception and sterilization products and services. 75 ILCS 70/6 & 70/6.1). It strips the protections provided by sections 4-11 of the IHRCA from those who fail to comply with these new requirements. Id at 745 ILCS 60/6.1. Worse still, because §6.1 imposes legal duties only on conscientious objectors like the Plaintiffs, their failure to comply exposes them to liability under the very law that once protected them. See 745 ILCS §70/12.

**LAW AND ARGUMENT**

Plaintiffs request a preliminary injunction under Fed.R.Civ.P. 65(a). The standard for preliminary relief in this circuit is well-settled:

> To obtain a preliminary injunction, the moving party must demonstrate a reasonable likelihood of success on the merits, no adequate remedy at law, and irreparable harm absent the injunction. If it makes this threshold showing, the district court weighs the balance of harm to the parties if the injunction is granted or denied and also evaluates the effect of an injunction on the public interest. The strength of the moving party's likelihood of success on the merits affects the balance of harms. The more likely it is that [the moving party] will win its case on the merits, the less the balance of harms need weigh in its favor.

*Planned Parenthood of Indiana, Inc. v. Commissioner of the Indiana State Department of Health*, 699 F.3d 962 (7th Cir. 2012) (quotations and citations omitted). As demonstrated below, the Plaintiffs satisfy the requirements for preliminary injunctive relief.

I.  **PLAINTIFFS HAVE A STRONG LIKELIHOOD OF SUCCESS ON MULTIPLE CLAIMS.**

Plaintiffs are likely to succeed on each of the claims advanced in support of its request for preliminary relief. P.A. 99-690 violates their First Amendment right to free speech, deprives them of due process of law, and violates their right to the free exercise of religion.

    A.    **P.A. 99-690 Violates The Plaintiffs' Right to Free Speech.**

P.A. 99-690 suffers from far-reaching and fatal First Amendment flaws in that it unconstitutionally compels speech and is unconstitutionally overbroad.

        1.    **P.A. 99-690 Is An Unconstitutional Content-Based Regulation.**

P.A. 99-690 violates the First Amendment because it compels Plaintiffs, under pain of legal sanction, to deliver a government message Plaintiffs do not want to deliver, and thereby "exacts a penalty on the basis of … content[.]" *See Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 256-57(1974) (internal quotations and citations omitted). The reason is plain to see: "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech." *Riley v National Fed'n of the Blind*, 487 U.S. 781, 795 (1988). "[A]*ll* speech inherently involves choices of what to say and what to leave unsaid." *Pacific Gas & Elec. Co. v. Public Util. Comm'n*, 475 U.S. 1, 11 (1986) (italics in original). "It is of no moment that the statute does not impose a complete prohibition. The distinction between laws burdening and laws banning speech is but a matter of degree. Accordingly, these 'content-based burdens must satisfy the same rigorous scrutiny as its content bans.'" *U.S. v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 812 (2000).

5

Moreover, forcing Plaintiffs to express views that they reject about the supposed benefits of abortion, sterilization, and contraception suffers from an additional and more damning defect: it constitutes viewpoint-based discrimination. As the Supreme Court has noted, when government targets "particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 829 (1992) (citations omitted). The "first amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984).

Because of its content- and viewpoint-based regulation, the First Amendment requires rigorous scrutiny of P.A. 99-690:

> A restriction on the content of protected speech…is invalid unless [the government] can demonstrate that it passes strict scrutiny—that is, unless it is justified by a compelling government interest and is narrowly drawn to serve that interest. The State must specifically identify an "actual problem" in need of solving, and the curtailment of free speech must be actually necessary to the solution. That is a demanding standard. It is rare that a regulation restricting speech because of its content will ever be permissible.

*Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011)(finding that government could not show the compelling interest needed to regulate speech where it could not prove violent video caused violent behavior in minors)(citations and quotations omitted, insert added).

As an initial matter, the State cannot show that Section 6.1 advances an actual compelling interest. Information about abortion and contraceptive drugs, devices, and procedures, and the entities that provide them is so widely available it is common knowledge. The State cannot show that its regulation addresses a real, actually existing problem, let alone a compelling one, and therefore it fails to satisfy the requirements of the First Amendment at the outset of the inquiry. *See, Entertainment Merchants*, *supra*; *see also*, *Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000)(noting government's failure to prove that signal-bleed of adult programming

was a significant problem and striking down regulation on the grounds that the "First Amendment requires a more careful assessment and characterization of an evil in order to justify a regulation as sweeping as this."); *U.S. v. Alverez*, __ U.S. __ (2012); 132 S. Ct. 2537, 2549 (reversing conviction under Stolen Valor Act based on finding that the "[g]overnment points to no evidence to support its claim that the public's general perception of military awards is diluted by false claims such as those made by Alvarez.")

Because the State's purported interest is chimerical, not compelling, the State also cannot show that the "curtailment of free speech…[is] actually necessary to the solution…." *Brown*, 564 U.S. at 799 (finding government regulation of content insupportable given lack of evidence that violent videogames actually caused violent behavior or state regulation could not actual ensure children could not view such game); *see also*, *Alverez*, __ U.S. at __, 132 S. Ct. at 2549 (finding government's failure to prove actual compelling interest resulted in a "lack of causal link between the Government's stated interest," showed that the "ACT is not actually necessary to achieve the Government's stated interest."). Under these circumstances, Section 6.1 is D.O.A.

Further, P.A. 99-0690's radical under-inclusiveness underscores how untenable is the State's claim that it's regulation advances a compelling interest. P.A. 99-690 applies *only* to those who object to its requirements by reason of conscience. It doesn't address and therefore exempts all those who fail to comply for reasons unrelated to conscience, e.g., because they believe the information is widely available, do not want to be bothered, don't want to lose business, or disagree with the requirements for a reason unconnected to conscience. The Supreme Court has consistently taught that under-inclusiveness raises serious doubts about whether the government is pursuing the interest it invokes, as opposed to actually targeting a disfavored speaker or viewpoint. *See, City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994); *Florida Star v. B.J.F.*, 491 U.S. 524, 540 (1989).

Furthermore, the State cannot show that its means are narrowly drawn or the least-restrictive means to effect its purported interest. When government restricts speech it is axiomatic that it must use the "least restrictive means among available, effective alternatives." *Ashcroft v. A.C.L.U.*, 542 U.S. 656, 666 (2008). And, of course, the "burden is on the Government to prove that the proposed alternatives will not be as effective as the challenged statute." Id. at 665 (internal quotations omitted); *see also*, *Playboy Entertainment Group*, 529 U.S. at 816 ("When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's obligation to prove the alternative will be ineffective to achieve its goals."). The State cannot satisfy this requirement because it cannot show why additional efforts on its part, e.g. public service announcements via T.V., radio, and the internet, or fliers posted in public libraries or youth centers would not effectively serve its purpose. *C.f. Alverez*, __ U.S. __, 132 S. Ct. at 2249 (noting government speech about medal winners would address the problem created by false claims*); Playboy Entertainment Group*, 529 U.S. at 823 (finding government failed to prove the adequate notice of signal bleed and the option to block would not address access to sexually explicit material by minors). The availability of obvious and straightforward alternative means by which the government might address its asserted interest reveals that the regulation is not narrowly tailored.

P.A. 99-690 is also unconstitutional because it is not a "narrowly drawn regulation[] designed to serve [the government's] interests without unnecessarily interfering with First Amendment Freedoms," *Sable Communications of California, Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989)(brackets supplied]. To the contrary, P.A. 99-690 sweeps within its ambit volumes of speech that do not implicate the State's putative interest. Thus it compels Plaintiffs and others to discuss legal treatment options even when Plaintiffs have disclosed to clients that they do not offer such treatments options and their clients have agreed to care subject to the limitation. P.A.

8

99-690 violates the First Amendment on this ground alone because the State's supposed interest in ensuring that patients receive "timely access to information and medically appropriate care" is not implicated when a client has accepted pregnancy services knowing abortion and contraception will not be discussed as a part of those services.[1]

P.A. 99-690 regulates too broadly also because it compels private speech by non-professionals serving Plaintiffs as staff or volunteer counselors. These are conversations among private citizens discussing personal situations. The IHRCA as amended by P.A. 99-690 applies to, and regulates, these conversations only because they take place at a location where some healthcare is delivered. See 745 ILCS 70/3(a)&(d), 70/6 & 70/6.1. The government is not entitled to regulate and compel the content of such discussions. As the Supreme Court observed many years ago, "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *West Virginia State Bd. Of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). The statute's overreach as described is broad and substantial and consequently violative of Plaintiffs' First Amendment rights. *See*, *e.g.*, *Stevens*, 559 U.S. 460 (2010)(holding statute prohibiting depictions of animal cruelty because statute created a criminal prohibition of "alarming breadth."); *Virginia v. Black*, 538 U.S. 343, 363-65 (2003)(affirming decision of Supreme Court holding cross-burning statute unconstitutionally overbroad because provision making cross-burning prima facie evidence of intent to intimidate created an unacceptable risk of the suppression of ideas).

### 2. P.A. 99-690 Is Unconstitutionally Overbroad.

---

[1] P.A. 99-690 fails to satisfy the requirement of narrow-tailoring in other ways. It compels discussion of legal treatment options even when the healthcare provider knows or has good reason to believe that the patient is not interested in those treatment options, and would be offended by discussing them, and even when the patient has indicated she wishes no discussion.

P.A. 99-690's over-reach is so extensive that it is unconstitutional under traditional over-breadth analysis. A regulation is unconstitutionally overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *U.S. v. Stevens*, 559 U.S. 460 (2010). P.A. 99-690's regulatory over-reach is substantial when gauged in relation to the state's putative interest. As stated, it compels speech when the State's interest in patient informed consent is not implicated because of patient agreement with limitations of services, or lack of interest in, or opposition to discussion of, certain treatment options, and it regulates private speech unrelated to provision of medical services. This overbreadth in regulation violates the First Amendment. *See*, *e.g.*, *Stevens*, *surpa*, *Black*, *supra*; *see also*, *City of Houston v. Hill*, 482 U.S. 451 (striking down ordinance making it unlawful to interrupt a police officer in performance of his duties as unconstitutionally overbroad because it allowed punishment of a wide range of speech and conduct protected by the First Amendment); *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 634-35 (finding overbroad a ban on solicitation by charities, when over 75% of their donations are spent on fundraising, because the ban would limit speech by charities whose principal purpose was to engage in public education and advocacy).

In sum, the State is not able to show that P.A. 99-690 is constitutional as applied to Plaintiffs. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006)(strict scrutiny requires the Court to look "beyond broadly formulated interests" and ask why "particular religious claimants" cannot be exempted."). And here it bears noting that the State cannot slip the bonds of the First Amendment by focusing on the narrow band of medical information conveyed by Plaintiffs (confirming pregnancy and estimating gestational age), claiming that is commercial speech, and using that speech as the pretext for regulation. Plaintiffs

10

do not charge for services and do not propose a commercial transaction; they do not advertise a specific product for sale; and their motive is not economic. For this reason, the State could not reasonably characterize this speech as commercial. Cf. *Bolger v. Young Drug Products Corp.*, 463 U.S. 60 (1983), 67-68 (noting a "combination of all these characteristics" would support a finding that certain speech is commercial).

Even if information classified as "medical" could be characterized as commercial speech, P.A. 99-0690 still violates the Plaintiffs' free speech rights. To regulate commercial speech the State must show: (1) a "substantial interest to be achieved by the regulation"; and (2) that the regulation "directly advance[s] the State's interest involved." *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 564 (1980). "[T]he regulation may not be sustained if it provides only ineffective or remote support for the government's purpose." Id. And, "if the governmental interest could be served as well by a more limited restriction….the excessive restriction cannot survive." Id. For the reasons already given, P.A. 99-690, as applied to Plaintiffs' speech, fails this slightly less demanding test. The regulation does not serve a "substantial" state interest, and its reach is not narrowly tailored, but overbroad, reaching even private discussions between non-professionals. See *Sorrell, v. IMS Health Inc.*, 564 U.S. 552, 567-68 (2011) (Striking down content-based and speaker-based restrictions on truthful, even useful, information to recipients).

    **B.**    **P.A. 99-690 Violates Due Process.**

The combination of broad reach and punitive consequences imposed by P.A. 99-690 also causes it to deprive the Plaintiffs of due process of law. A "fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *See*, *F.C.C. v. Fox Television Stations, Inc.*, __ U.S. ___, 132 S. Ct. 2307, 2317 (2012) (citations omitted). As the Court has explained:

> Even when speech is not at issue, the void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way. When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech.

Id. When P.A. 99-690 is considered against the backdrop of Illinois law, it violates Due Process.

The IHRCA as amended by P.A. 99-690 is open to arbitrary enforcement because Sections 6 and 6.1(1) can be read in two very different ways. Read one way, the law conforms to the existing standard of medical care before IHRCA was amended. If so, Plaintiffs remain free to limit the professional services they render as long as they fully disclose these limitations to their patients. They remain free to exercise independent and reasonable professional judgment when deciding whether even to discuss such options with clients after considering all relevant factors and when assessing the risks and benefits of the range of available treatment options.

But read another way, P.A. 99-690 holds physicians and healthcare providers with conscience-based objections to a special medical standard of care. Under this reading, the Plaintiffs are not free to structure their practices to ensure consistency with their religious convictions. Under this reading, that standard of care requires, in all circumstances, and without reference to the particular facts relating to any particular patient, a discussion of abortion, contraception, and sterilization. Worse still, the law appears to prohibit these health care providers from exercising their independent but reasonable medical judgment by requiring them to affirmatively state that abortion, contraception, and sterilization have "benefits," which is the state's party-line, even though the health care providers believe otherwise based on their own reasonable professional judgment.

Put starkly, the Plaintiffs confront a vicious dilemma. They can continue to practice as they have in the past and run the risk of discrimination, sanctions, and liability or they must

violate their religious convictions in order to steer clear of the risk of such penalties. The dilemma violates Plaintiffs' right to due process of law because it leaves them to "guess what the law requires," and "invites, indeed encourages, arbitrary and discriminatory enforcement." *Chicago v. Morales*, 527 U.S. 41, 56-57 (1999).

### C. P.A. 99-690 Violates TWC's Right To The Free Exercise of Religion.

On its face, in its purpose, and in its operation, P.A. 99-690 targets health care providers because they have a religious-based conscientious objection to discussing or providing certain healthcare, heaping special duties on them, but leaving alone all others who do not invoke religious belief. For this reason P.A. 99-0690 is not religiously neutral and generally applicable, and must satisfy strict scrutiny. *See*, *e.g.*, *Church of the Lukumi Babalu Aye*, *Inc*. v. *City of Hialeah*, 508 U.S. 520 (1993) (finding law that targeted and restricted rights of members of religious group must satisfy strict scrutiny). As already demonstrated, P.A. 99-690 cannot satisfy strict scrutiny. One example drives home the point: since it blinks reality to presume that a woman cannot readily locate abortion, sterilization, or contraceptives services, what "actually existing" state interest is advanced by requiring Plaintiffs, against their religious beliefs, to provide this information? To ask the question is to answer it: there is none.

### II. Plaintiffs Satisfy The Remaining Requirements For Preliminary Relief.

Plaintiffs satisfy the other requirements for preliminary injunctive relief. They will suffer irreparable harm if P.A. 99-690 is applied to them because their "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also*, *Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 507 (7th Cir. 1998)(same).

The balance of hardships and public interest also favor granting preliminary relief. "[U]nconstitutional restrictions on speech are generally understood not to be in the public

interest and to inflict irreparable harm that exceeds any harm an injunction would cause…." *Smith v. Executive Director of Indiana War Memorials Com'n*, 742 F.3d 282, 286 (7th Cir. 2014); *see also*, *Ayres v. City of Chicago*, 125 F.3d 1010, (7th Cir. 1997) (granting preliminary relief to peddlers of T-shirts where lost chance to reach intended audience was enormous while threat to governmental interest was slight).

In this case, the interest of the intended audience, another dimension of the right of free speech, deserves attention. *See*, *e.g.*, *Bigelow v. Virginia*, 421 U.S. 809 (1975) (striking down a penalty on advertising abortion services, observing that the advertisement in question "conveyed information of potential interest and value to a diverse audience…[and] [t]hus…appellant's First Amendment interests coincided with the general public."). Plaintiff's request for preliminary relief, if granted, will benefit both private interests and the public interest. Plaintiffs have helped many thousands of individual women coming to them for assistance in difficult circumstances. Plaintiffs want to continue to do so. While seeking to vindicate their own constitutional rights, injunctive relief will also benefit Plaintiffs' individual clients and the public interest, both of which interests are served by freely sharing an array of information of interest to women debating whether to continue their pregnancies, and information that is freely disseminated, not dictated for dissemination by the state.

## CONCLUSION

Once the claims of the Plaintiffs and the State are evaluated, Plaintiffs urge the Court to find that they have made an ample showing supporting their request for preliminary injunctive relief. Plaintiffs urge the Court to enter the relief requested so they may continue to operate while this suit is pending without a proverbial sword of Damocles hanging above their head.

Respectfully submitted this 16th day of March, 2017.

/s/Thomas Olp
Thomas Brejcha
Thomas Olp ARDC#3122703
Thomas More Society
19 South LaSalle St. Suite 603
Chicago, IL 60603
(312) 782-1680
tolp@thomasmoresociety.org

Attorneys for Plaintiffs